UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RHONDA ADKINS,
    PLAINTIFF

CASE NO. 1:07-CV-00723
(BARRETT, J.)
(HOGAN, M.J.)

VS.

COMMISSIONER OF
SOCIAL SECURITY,
    DEFENDANT

## REPORT AND RECOMMENDATION

Plaintiff filed her application for supplemental security income (SSI) in April, 2004. She alleged an onset date of June 1, 1999. Plaintiff's application was denied, both initially and upon reconsideration. Plaintiff then requested and obtained a hearing before an Administrative Law Judge (ALJ) at Cincinnati, Ohio on January 31, 2007. At the hearing, Plaintiff, who was represented by counsel, testified as did Vocational Expert (VE), Donald E. Shrey. Following an unfavorable decision in March, 2007, Plaintiff processed an appeal to the Appeals Council, who refused review in July 2007. Plaintiff then filed her Complaint with this Court in August 2007, and sought judicial review of the final order of the Defendant Commissioner denying her benefits.

## STATEMENTS OF ERROR

Invoking Sentence 4 of 42 U.S.C. §405(g), Plaintiff seeks an Order reversing the ALJ's decision and granting her benefits or, at a minimum, a remand of this case to the Social Security Administration to correct the following errors: the ALJ failed to grant proper weight to Dr. Southerland, an consultative examiner's opinion; the ALJ erred by not finding Plaintiff met or equaled Listing 12.05 (c); and the ALJ "engaged in selective review." Plaintiff alternatively seeks a remand under Sentence 6 of 42 U.S.C. §405(g) for administrative consideration of certain new and material evidence.

## ADDITIONAL BACKGROUND

Plaintiff was born September 24, 1970, and was 36 years of age at the time of the ALJ's decision. Therefore Plaintiff is considered a "younger person" for purposes of resolving her SSI application. *See* 20 C.F.R. §416.963 (c). Plaintiff has a ninth grade or "limited" education and past work experience as a cashier, dishwasher and daycare worker.

## PLAINTIFF'S TESTIMONY AT THE HEARING

When asked by the ALJ why she missed so much school as a child, Plaintiff stated she did not know why. Plaintiff testified that she suffers from chest pain and anxiety. She stated that she had no energy to get up and always had chest pain, but had been told the chest pain was due to anxiety. She takes Valium for anxiety and Triletal for depression. Despite medication, Plaintiff states she continues to have chest pain. Plaintiff further testified to a leaking valve in her heart and irritable bowel syndrome. She has three children at home, ages 8, 10, 14, and receives help from her eldest daughter, niece or mother. At the time of the hearing, Plaintiff's husband was incarcerated.

Plaintiff further testified that she did not read, had difficulty spelling and was easily distracted. She reported problems with watching television due to confusion and distraction. She testified she would experience anxiety if she worked alone because of her confusion. She reported having four or five bad days per week in which she would lie in bed or on the couch. However, on a good day Plaintiff reported she would be up moving around. She reported seeing a therapist once a month but has never been hospitalized for mental problems. (Tr. 388-409).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's hypothetical question to the VE assumed an individual who has the residual functional capacity to perform the full range of exertional work but is limited to routine, repetitive tasks; understanding and carrying out only simple instructions; no contact with the general public; only occasional superficial contact with coworkers and with supervisors after the

initial training period; a stable, predictable work environment with few, if any, changes from day-to-day; no assembly line work and no work with a strict high production quota. The VE responded that the individual would be limited to occupations such as garment sorter, of which there are 150 jobs locally and 15,000 nationally; folding machine operator, of which there are 200 jobs locally and 15,000 nationally; or night cleaner, of which there are 700 jobs locally and 80,000 nationally.

The ALJ gave the VE a second hypothetical in which he was asked to consider absences of one day per week or three days per month, to which he responded that such would exceed the absenteeism tolerance level of most employers. (Tr. 409-418).

## OPINION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ concluded that Plaintiff has severe impairments of "mood disorder, depression, panic attacks, general anxiety disorder, borderline intellectual functioning, and bipolar disease." The ALJ concluded that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of exertional activities with non-exertional limitations. Due to the claimant's mental impairments she has mild limitations in activities of daily living and moderate limitations in social functioning, concentration, persistence, pace, and the ability to deal with work-related stress. She is limited to work involving routine, repetitive tasks and understanding and carrying out only simple instructions. She should have no contact with the general public and only occasional superficial contact with coworkers. Likewise, she should have only occasional contact with supervisors after her initial training period. To minimize work related stress she should work in a stable, predictable work environment and should not be required to perform assembly line work or work with strict, high production quotas.

(Tr. 33).

## MEDICAL RECORD

The administrative record contains both school and medical records. Plaintiff's school records reveal that, in October 1980, Plaintiff took a cognitive abilities test through the Hamilton

City Schools. (Tr. 362). Her SAS (Standard Age Score) results were Verbal (80), Quantitative (74) and Nonverbal (74), below average and indicative of one who had very low abilities. It should be noted that SAS scores are not the same as IQ scores. Psychometrically, SAS scores are calculated in a much different manner than IQ scores. (Tr. 129-130).

When Plaintiff was in the 5th grade, her grades ranged from A to C-. (Tr. 367). In the 7th grade, her grades ranged from A to F. She missed 35 days of school during this school year. (Tr. 369). In the 8th grade, Plaintiff's grades ranged from B to F. During that school year, she missed 54 days of school. (Tr. 370). In the ninth grade, Plaintiff failed every subject and repeated the grade. (Tr. 371). She had missed 26 days during that school year. She eventually withdrew from the 9th grade in the Fall of 1987. (Tr. 372).

The Plaintiff's medical record begins with her family physician, Eleia Reyes, M.D. Dr. Reyes treated Plaintiff from June 9, 1998 to November 30, 2002, for anxiety, depression and irritable bowel syndrome. She was prescribed Lexapro and Zelnorm. (Tr. 132-133).

Plaintiff treated with Chetna Mital, M.D., from January 8, 2003 through March 10, 2004. Plaintiff's primary complaints during this time were chest pain secondary to mitral regurgitation and tricuspid regurgitation, which testing revealed to be non-cardiac related. Dr. Mital noted that Plaintiff's chest pain was anxiety related and she prescribed Buspar. (Tr. 147). Plaintiff's irritable bowel syndrome was controlled by Zelnorm. Plaintiff complained she received no relief of her depression and anxiety with Paxil, so Dr. Mital increased her Paxil, then later replaced the Paxil with Effexor. Dr. Mital referred Plaintiff to a psychiatrist and prescribed the maximum dose of Effexor. (Tr. 136-96).

On March 13, 2003, Plaintiff went to the ER at The Fort Hamilton Hospital for chest pain, however all cardiac tests were normal. She was diagnosed with anxiety and responded to Ativan. (Tr. 205-207).

Plaintiff went to the ER at The Fort Hamilton Hospital on March 11, 2004 for chest pain and was diagnosed with anxiety attacks. (Tr. 218-220).

In June of 2004, Plaintiff began psychological treatment with Dr. Gerald Shubs at the Hamilton Counseling Center. On intake, she had symptoms of depression and anxiety attacks. (Tr. 255). Dr. Shubs diagnosed major depressive disorder, anxiety disorder and ruled out bipolar

disorder. (Tr. 258). Plaintiff continued to treat with Dr. Shubs through the date of the hearing. Over the course of her treatment, she reported chest pain, depression, anxiety, irritability, crying spells and difficulty with crowds. She was prescribed Trileptal, Valium and Ritalin. (Tr. 259-260; 265, 268, 270; 305,307-308, 310; 374, 376-377, 380, 382).

At the request of the administration, Plaintiff presented to George Lester, Psy.D., in October 8, 2004, for a psychological evaluation. Dr. Lester noted that she appeared anxious and was passive. Plaintiff reported feelings of worthlessness and guilt, problems concentrating, crying spells and feeling restless and irritable. She also reported impulsive behavior and feeling angry. He noted that Plaintiff began mental health treatment in May 2004, and found it helpful; her medications were Valium, Effexor, and Ritalin. On WAIS-III testing, she had a full scale IQ of 65, had poor abstraction ability and was unable to respond to any proverbs given to her. Dr. Lester found that Plaintiff's IQ score was "likely a low estimate of her actual functioning. She is likely functioning within the borderline range." Dr. Lester diagnosed bipolar disorder, alcohol abuse in full remission, an IQ estimated in the borderline range, and a personality disorder not otherwise specified. Plaintiff was assigned a Global Assessment of Functioning (GAF) score of 55 to 60. Dr. Lester concluded that Plaintiff's ability to relate to others, including coworkers and supervisors was mildly to moderately impaired, given her argumentative and impulsive behavior, as well as her tendency not to socialize outside of her family. Dr. Lester further found that Plaintiff's ability to maintain attention and concentration would be mildly impaired; he noted her occasional difficulty during one-on-one testing. Dr. Lester also reported that Plaintiff's ability to understand, remember and carry out simple instructions would be mildly to moderately impaired; she recalled two out of five objects after five minutes, and carried out two- to three-step instructions. He found that Plaintiff's ability to deal with the stresses of day-to-day work was mildly to moderately impaired and that she had a limited, sporadic work history, not having worked since 2001. (Tr. 277-282).

On October 22, 2004, Joan P. Williams, Ph. D., reviewed the medical evidence of record, and opined that Plaintiff did not meet or equal the listings. She concluded that Plaintiff was markedly limited in her ability to interact with the public and moderately limited in her ability to get along with coworkers; respond appropriately to changes in work setting; accept instructions and respond to criticism; maintain concentration and attention; and complete a normal workday

or workweek without interruption from psychologically based symptoms. Plaintiff could perform work and maintain a routine of tasks and responsibilities but might be ill-suited for work with the public or other tasks requiring patience and social finesse. Dr. Williams' opinion was affirmed by Alice L. Chambly, Psy. D., on April 12, 2005. (Tr. 283-299).

On February 17, 2005, Plaintiff attended a second psychological evaluation with Deborah Southerland, Ph.D. Plaintiff reported spending a lot of time in her room, being easily upset and having difficulty with memory and concentration. She reported having panic attacks and did not like to be around people. Dr. Southerland noted Plaintiff had limited insight and judgment. She diagnosed mood disorder and panic attacks with agoraphobia, estimated low borderline intellectual functioning and assigned Plaintiff a GAF score of 55. Dr. Southerland concluded that Plaintiff's ability to maintain attention and concentration was moderately limited, her ability to get along with peers and supervisors was mildly to moderately limited and her ability to maintain good work habits such as attendance and punctuality was seriously limited. (Tr. 300-03).

On January 31, 2007, Dr. Shubs completed a functional capacity evaluation. He treated Plaintiff for 30 months on a regular basis. Dr. Shubs listed Plaintiff's medications and noted that there were no side effects. In describing his supporting clinical findings, Dr. Shubs reported that Plaintiff showed mild anxiety during her sessions with him; she was minimally symptomatic; but that in crowds or under stress, her presentation may be different. Dr. Shubs diagnosed ADHD, bipolar disorder, generalized anxiety disorder and panic disorder. He opined that Plaintiff could not work in coordination with, or proximity to, others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; or deal with normal work stress in a regular work setting. Dr. Shubs further noted that Plaintiff could not satisfactorily sustain an ordinary routine without special supervision, get along with co-workers or peers without distracting them or exhibiting behavioral extremes and interact appropriately with the general public on a sustained bases in a regular work setting. Dr. Shubs opined that Plaintiff would be absent more than four days per month. However, Dr. Shubs found that Plaintiff did not "have a low IQ or reduced intellectual functioning." (Tr. 16-20).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971)(citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews,* 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months and plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 416.920. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix I. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 416.920(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the

performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of HHS.,* 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of HHS.,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §416.920(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §416.921(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.,* 736 F.2d 352, 357 (6th Cir.1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,,* 880 F.2d 860, (6th Cir.1988). An impairment will be considered non severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.,*773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary'S decision on this issue must be supported by substantial evidence. *Mowery v. Heckler,* 771 F.2d 966 (6th Cir. 1985). Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.,* 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson,* 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999); *Born,* 923 F.2d at 1173; *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiffs individual capacity to

perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.,* 587 F.2d 321, 323 (6th Cir. 1978); *see also Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir, 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner,* 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services,* 820 F.2d 768, 771 (6th Cir. 1987).

When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. *Casey v. Secy. of Health and Human Services,* 987 F.2d 1230, 1233 (6th Cir. 1993). This Court reviews the administrative law judge's decision, not that of the Appeals Council denying the request for review. *Id.* Consequently, only evidence of record before the administrative law judge may be considered by the District Court in reviewing the final decision of the Commissioner of Social Security denying benefits. *Cline v. Comm'r. of Social Security,* 96 F.3d 146, 148-49 (6th Cir. 1996). A claimant may seek remand so that the evidence presented to the Appeals Council can be considered by the administrative law judge. *Id.*; *Gartman v. Apfel,* 220 F.3d 918, 922 (8th Cir. 2000).

Section 405(g), sentence six, provides, in relevant part:

> The court may . . . at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

The evidence supporting a motion to remand must be both new and material. *Cline v. Commissioner,* 96 F.3d 146, 148 (6th Cir. 1996). Evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001)(quoting *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)). It is material if there is "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.*(quoting *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 711 (6th Cir. 1988)). Good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (quoting *Willis*

*v. Secretary of Health & Human Services,* 727 F.2d 551, 554 (1984)(per curiam)). Mere cumulative evidence does not establish good cause for a remand. *Borman v. Heckler,* 706 F.2d 564, 568 (6th Cir. 1983); *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980). The plaintiff has the burden of establishing that the evidence is new and material and that there is good cause for not having presented the evidence to the Administrative Law Judge. *Id.* (citing *Oliver v. Secretary of Health & Human Services,* 804 F.2d 964, 966 (6th Cir. 1986)).

In this case, Plaintiff bears the burden of establishing these two remand requirements. *Hollon ex rel. Hollon v. Commissioner of Social Sec.,* 447 F.3d 477, 483 (6th Cir. 2006).

## OPINION

Plaintiff contends that a sentence-six remand is warranted due to the new and material opinion of her treating psychiatrist, Dr. Shubs, which was received the same week the ALJ issued his decision. (Doc. #7 at 8).

The Commissioner opposes a sentence-six remand because Plaintiff has not shown good cause for failing to obtain the information prior to the administrative hearing. The Commissioner also contends that the evidence is not material because Dr. Shubs found Plaintiff did not "have a low IQ or reduced intellectual functioning." (Tr. 19). The Commissioner argues that even if the ALJ had the opportunity to review Dr. Shubs' functional capacity evaluation he would not have changed his decision that Plaintiff was not disabled.

Dr. Shubs noted that Plaintiff could not work in coordination with, or proximity to, others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; or deal with normal work stress in a regular work setting. Dr. Shubs further noted that Plaintiff could not satisfactorily sustain an ordinary routine without special supervision; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; or interact appropriately with the general public on a sustained bases in a regular work setting. Moreover, Dr. Shubs opined that Plaintiff would be absent more than four days per month. (Tr. 16-20).

Although this evidence was submitted to the Appeals Council, it may be considered by the Court if the "good cause" standard is met. *See Cotton v. Shalala,* 2 F.3d 692 (6th Cir. 1993);

*see also Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001). For the reasons which follow, we find that Plaintiff has established "good cause" for failing to file the additional evidence prior to the administrative hearing. It is undisputed that the evidence was not available until after the administrative hearing in January 2007. Plaintiff's counsel informed the ALJ during the hearing that a questionnaire was given to Dr. Shubs, but that it had not yet been returned. Plaintiff's counsel was later informed that Dr. Shubs was out of town and could not complete the assessment prior to the hearing. While the Commissioner argues that Plaintiff had time to request such an opinion during the thirty months of treatment with Dr. Shubs, the fact remains that Plaintiff sought the evidence prior to the hearing but was unable to obtain such prior to the hearing. Moreover, had Plaintiff requested an assessment earlier, as Defendant suggests, a complete picture of Plaintiff's limitations may not have been available to Dr. Shubs.

Turning to materiality, Plaintiff's additional evidence must: (1) be relevant and probative of her condition prior to the ALJ's decision, and (2) establish a reasonable probability that the ALJ would have reached a different decision if he had considered the evidence. *See Sizemore v. Secretary of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988); *see also Hollon*, 447 F.3d at 488. The evidence concerns Plaintiff's mental health and work limitations during the relevant time period and supports Plaintiff's testimony regarding her mental health struggles.

More importantly, as the ALJ noted, there were no medical assessments of functioning from any treating source prior to Dr. Shubs' report. (Tr. 35). Dr. Shubs is Plaintiff's treating psychiatrist and has treated Plaintiff for nearly three years prior to the hearing. Dr. Shubs' RFC assessment was based on upon his years of observation and treatment with Plaintiff and is well supported by his progress notes. Dr. Shubs's report is also consistent with the record. For example, state agency evaluating psychologist, Dr. Lester, felt that Plaintiff's ability to relate to others, including coworkers and supervisors was mildly to moderately impaired, given her argumentative and impulsive behavior, as well as her tendency to avoid socializing outside of her family. Dr. Lester also opined that Plaintiff would need assistance from family in managing her funds. (Tr. 282). Dr. Southerland opined that Plaintiff's ability to maintain good work habits such as attendance and punctuality was seriously limited. (Tr. 303). State agency reviewing psychologist, Dr. Williams, considered Plaintiff's ability to interact with the public markedly impaired. (Tr. 298). Dr. Shubs' report is well-supported and is consistent with other evidence of

record. Further, Dr. Shubs, a psychiatrist, is a specialist in mental health disorders and treatment. Thus, there is a reasonable probability that the ALJ would have reached a different decision had he considered this evidence.

Accordingly, we find that Plaintiff has demonstrated "good cause" and find that the additional evidence is both new and material. As a result, a remand of this matter to the Social Security Administration is warranted under sentence six of 42 U.S.C. §405(g). In light of this decision, the Court makes no ruling on Plaintiff's remaining substantive challenges to the ALJ's decision. *See Melkonyan*, 501 U.S. at 98; *see Raitport v. Callahan*, 183 F.3d 101, 103-04 (2nd Cir. 1999)(sentence-six remand involves no substantive ruling on the correctness of an administrative decision).

**IT IS THEREFORE RECOMMENDED THAT:**

This case be **REMANDED** to the ALJ pursuant to sentence six for the consideration of new and material evidence. On remand, the ALJ should reevaluate Plaintiff's claim in light of Dr. Shubs' RFC assessment. Upon remand, this case is deemed ADMINISTRATIVELY CLOSED.

However, this Court retains jurisdiction over this action such that should Plaintiff be dissatisfied with the new decision of the Commissioner on remand, Plaintiff may petition the Court for entry of an Order reinstating the case on the active docket for judicial review of the new decision. Plaintiff must file said petition within thirty (30) days of the date of the Commissioner's new decision. Should both sides be satisfied with the Commissioner's new decision following remand, the prevailing party shall, within thirty (30) days of the Commissioner's decision, petition the Court for entry of a Final Order adopting and ratifying the new decision.

Date 10/31/08

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS REPORT & RECOMMENDATION

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Rhonda Adkins,
    Plaintiff

Case No. 1:07cv0723

vs.

Commissioner of Social Security,
    Defendant

(Barrett, J.; Hogan, M.J.)

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).